STATE of Minnesota, Appellant,

v.

**Dale Eugene ELLENBERGER,**
**Respondent.**

No. C7–95–2137.

Court of Appeals of Minnesota.

Feb. 13, 1996.

Review Denied April 16, 1996.

Hubert H. Humphrey, III, Attorney General, St. Paul, Alan L. Mitchell, St. Louis County Attorney, Duluth, James B. Florey, Assistant County Attorney, Virginia, for Appellant.

David J. Malban, Duluth, for Respondent.

Considered and decided by NORTON, P.J., and LANSING and FOLEY,* JJ.

## OPINION

LANSING, Judge.

The state appeals the district court's order dismissing a criminal charge of possession of a short-barreled shotgun. In his motion for dismissal, Dale Ellenberger successfully challenged the application of the short-barreled shotgun definition under Minn.Stat. § 609.67, subd. 1(c), to the modified shotgun in his possession. We read the statute to prohibit possession of the modified shotgun and reverse and remand.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

## FACTS

Police found a weapon loaded with three shotgun shells in the trunk of Dale Ellenberger's car. The weapon was originally a shotgun. Alterations to the shotgun had shortened its overall length to twenty-six inches and reduced the length of the barrel to approximately 14-½ inches. A further modification to the stock of the gun gave the weapon a pistol-type grip, eliminating the need for the person firing the weapon to rest it on his shoulder in order to fire it.

Ellenberger was subsequently charged with possessing a short-barreled shotgun, in violation of Minn.Stat. § 609.67, subd. 2. No other charges were filed.

Ellenberger moved for dismissal of the complaint asserting that the weapon in his possession was not a "short-barreled shotgun," as defined by Minn.Stat. § 609.67, subd. 1(c). The district court granted the motion and dismissed the complaint. The state now appeals.

## ISSUE

Is a weapon a "short-barreled shotgun," within the meaning of Minn.Stat. § 609.67, subd. 1(c), if it is a modified shotgun that has a barrel length of less than eighteen inches, an overall length of not less than twenty-six inches, and a pistol-type grip?

## ANALYSIS

■ This appeal requires a construction of two statutory provisions:

(b) "Shotgun" means a weapon designed, redesigned, made or remade *which is intended to be fired from the shoulder* and uses the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

(c) "Short-barreled shotgun" means a shotgun having one or more barrels less than 18 inches in length *and* any weapon made from a shotgun if such weapon as

art. VI, § 2.

modified has an overall length of less than 26 inches.

Minn.Stat. § 609.67, subd. 1 (1994) (emphasis added). An appeal raising matters of statutory construction involves questions of law, which the reviewing court considers de novo. *Schumacher v. Ihrke*, 469 N.W.2d 329, 332 (Minn.App.1991).

Ellenberger proposes two reasons why these provisions of Minn.Stat. § 609.67, subd. 1, should not apply to his weapon. First, he argues that we should construe the use of the word "and" in Minn.Stat. § 609.67, subd. 1(c), in a purely conjunctive sense. In other words, under Ellenberger's interpretation, a weapon must satisfy two requirements in order to qualify as a "short-barreled shotgun" within the meaning of the statute; it must (1) have an overall length of less than twenty-six inches, ***and*** (2) have a barrel length of less than eighteen inches. Second, he asserts that a "short-barreled shotgun" must also be "intended to be fired from the shoulder" at the time of possession. The definition of "shotgun" explicitly lists the characteristic of being "intended to be fired from the shoulder." Minn.Stat. § 609.67, subd. 1(b). By extension, Ellenberger argues that a "short-barreled shotgun" must satisfy the same requirement.

Ellenberger's weapon did not have an overall length of less than twenty-six inches, nor was it intended to be fired from the shoulder at the time of his arrest. Therefore, Ellenberger maintains that the district court properly concluded that he did not unlawfully possess a "short-barreled shotgun." We disagree and consider each of Ellenberger's arguments in turn.

### I

▮ Statutes "should be construed according to their plain and ordinary meaning." *Nadeau v. Austin Mut. Ins. Co.*, 350 N.W.2d 368, 373 (Minn.1984). Words and phrases are construed according to rules of grammar and according to common and approved usage. Minn.Stat. § 645.16 (1994). Ellenberger urges us to read the statute as a list of necessary conditions in which the word "and" links each condition in the conjunctive sense. *See, e.g., Jindra v. City of St. Anthony*, 533 N.W.2d 641, 645 (Minn.App.1995); *State v. Freeberg*, 390 N.W.2d 429, 431 (Minn.App. 1986). But a careful reading of the definition of "short-barreled shotgun," applying ordinary rules of grammar, demonstrates two independently modified subjects rather than a series of conditions. Each subject is modified by its own descriptive phrase. The two distinct subjects are "shotgun" and "any weapon made from a shotgun." Shotgun is further refined by the modifying phrase "having one or more barrels less than eighteen inches in length." The second subject, "any weapon made from a shotgun" is further modified by "overall length of less than twenty-six inches." Consequently, the plain and grammatical reading shows the legislature intended to punish the use of two distinct types of firearms, and an individual will violate the statute by possessing either a shotgun with a barrel of less than eighteen inches *or* a modified shotgun with a total length of less than twenty-six inches. *See United States v. Hall*, 972 F.2d 67, 69–70 (4th Cir.1992) (holding that a statutory definition incorporating two distinct subjects, each with its own modifying clause, provides two independently sufficient ways to satisfy the definition); *Lankford v. Law Enforcement Assistance Admin.*, 620 F.2d 35, 36 (4th Cir.1980) (interpreting the use of two distinct terms in a statute as evidence of intentional differentiation by the legislature); *see also Johnson v. State*, 421 N.W.2d 327, 332 (Minn.App.1988) (implying without deciding that either type of firearm satisfies the statutory definition), *review denied* (Minn. May 4, 1988).

This construction is consistent with the interpretations made by courts in other jurisdictions with similar statutes. *See, e.g., Hall*, 972 F.2d at 70 (noting that congressional intent behind enactment of 18 U.S.C. § 921(a)(6) was "to punish the use of two distinct types of firearm[s]."); *Florida v. Graham*, 655 So.2d 1279, 1281 (Fla.Dist.Ct. App.1995) ("[T]he two categories of weapons created by the statute are not mutually exclusive."); *Brook v. Indiana*, 448 N.E.2d 1249, 1251 (Ind.Ct.App.1983). A New York court gave that state's statute a similar construction, although the state legislature sub-

sequently amended the statute by replacing "and" with "or." *New York v. Santiago,* 133 Misc.2d 161, 506 N.Y.S.2d 136, 142 (1986). Minn.Stat. § 609.67 prohibits possession of both a shotgun with a barrel of less than eighteen inches and a modified shotgun with an overall length of less than twenty-six inches.

### II

It is undisputed that Ellenberger's weapon does not satisfy the second description of short-barreled shotguns, because it does not have an overall length of less than twenty-six inches. For the weapon otherwise to qualify as a short-barreled shotgun under Minn.Stat. § 609.67, subd. 1(c), it therefore must be "a shotgun having one or more barrels less than 18 inches in length." The parties do not dispute that the weapon was originally designed as a shotgun and that it now has a barrel of less than eighteen inches in length.

■ Ellenberger nevertheless asserts that, in order for a weapon to qualify as a "shotgun having one or more barrels less than 18 inches in length," the barrel must not only be less than eighteen inches, but the weapon must also be a "shotgun" as defined by Minn.Stat. § 609.67, subd. 1(b). Under that provision, a shotgun is "a weapon * * * which is intended to be fired from the shoulder * * *." *Id.* Ellenberger asserts that a weapon cannot be a "short-barreled shotgun" unless it also is intended to be fired from the shoulder at the time of possession. Due to the lack of a shoulder stock on his weapon, Ellenberger contends that it is not intended to be fired from the shoulder and does not fall within the statutory definition of a short-barreled shotgun.

■ Penal statutes must be strictly construed and, if a construction is uncertain, the statute may not be interpreted to multiply felonies. *State v. Soto,* 378 N.W.2d 625, 627–28 (Minn.1985). "The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature, under the guise of 'judicial construction.'" *Id.* at 628 (citations omitted).

The state argues that Ellenberger's proposed construction would prevent the statute from reaching the "mischief" that the legislature intended to remedy. *See* Minn.Stat. § 645.16(3) (1994) (legislative intent may be discerned by consideration of "[t]he mischief to be remedied").

By creating a new offense of possession of a short-barreled shotgun in 1977, the legislature created a new penalty. Before the creation of this specific offense, a person who recklessly handled "a gun or other dangerous weapon" in violation of Minn.Stat. § 609.66, subd. 1(1) (1976), for example, would have been subject to imprisonment for not more than 90 days or to payment of a fine of not more than $300, or both. Minn.Stat. § 609.02, subd. 3 (1976) (defining misdemeanor offenses). By contrast, after the 1977 legislation, a violation of the short-barreled shotgun statute could have resulted in imprisonment of up to five years, or a fine of up to $5000, or both. Minn.Stat. § 609.67, subd. 2 (1976 & 1977 Supp.).

The relatively severe penalty provided for a short-barreled shotgun offense is commensurate with the legislature's perceived severity of the offense. During the legislative hearings on S.F. No. 766, the bill which later became Minnesota's anti-short-barreled shotgun law, legislators discussed their reasons for outlawing short-barreled shotguns.

One of the sponsors of the bill in the Senate explained that his reason for introducing the bill was that local law enforcement officials had contacted him in recent years to request such legislation, so that they could prosecute people with short-barreled shotguns in the state court system. *Hearing on S.F. No. 766 Before the Senate Committee on the Judiciary* (Apr. 6, 1977) (statement of Sen. Davies). In support of the legislation, Senator Davies observed: "The sawed-off shotgun has no legitimate use in the society whatsoever. It's not used for hunting. It's not used for marksmanship. It's simply a weapon of crime." *Id.* A legislator in the House of Representatives similarly remarked that "there is no legitimate use of a sawed-off shotgun." *Hearing on S.F. No. 766 Before the House Committee on Criminal Justice* (May 2, 1977) (statement of Rep. Brandl).

The legislature ultimately incorporated the short-barreled shotgun provisions into a modified section of the statutes that had criminalized the possession of machine guns. Minn.Stat. § 609.67. Explaining why Minnesota law should criminalize short-barreled shotguns as well as machine guns, Representative Brandl noted that, "at short range, a sawed-off shotgun is probably at least as vicious as a machine gun." *Id.*

Given these legislators' statements on short-barreled shotguns, we conclude that the legislature intended to outlaw not only "shotguns" with barrels of less than eighteen inches that are still capable of being fired from the shoulder, but also "shotguns" with barrel lengths of less than eighteen inches that are not intended to be fired from the shoulder.

We find support for this interpretation in the case of *New York v. Crivillaro*, 170 A.D.2d 312, 566 N.Y.S.2d 34 , *appeal denied*, 77 N.Y.2d 993, 571 N.Y.S.2d 919, 575 N.E.2d 405 (1991), in which a New York appellate court held that that state's statute prohibiting sawed-off shotguns applied to facts virtually identical to those here. The weapon at issue in *Crivillaro* was an altered shotgun with an overall length of twenty-nine inches, a barrel of 16–¼ inches, and a shortened shoulder stock. 566 N.Y.S.2d at 35. The court rejected the defendant's argument that, because the stock had been cut, the weapon was not "intended to be fired from the shoulder" and was therefore not illegal under New York law. *Id.* (construing N.Y.Penal Law § 265.00(3)(b), (12)). In its analysis in *Crivillaro*, the court viewed the definition of "shotgun" as a provision designed to describe what constitutes a legal weapon. *Id.* By contrast, the purpose of defining "firearm" under New York law (comparable to the term "short-barreled shotgun" in Minnesota) is to describe what constitutes an illegal weapon. *Id.* In the view of the court in *Crivillaro*, the twenty-nine-inch-long weapon at issue there was such an illegal firearm, despite its modified stock. *Id.*

Although we recognize some differences between the Minnesota statute and its New York counterpart,[1] we nevertheless find that the analysis under *Crivillaro* applies equally well to an interpretation of Minn.Stat. § 607.67, subd. 1(b), (c). Moreover, such an interpretation reflects the "two legislative intentions" behind this type of statute prohibiting short-barreled shotguns. *Brook*, 448 N.E.2d at 1251. First, a twenty-six-inch-length limitation reflects the notion that "such a shotgun is considered concealable and therefore, undesirable by the legislature." *Id.* Second, the eighteen-inch-barrel limitation represents a compromise, recognizing that some "shotguns"—those with barrels of longer than eighteen inches—have a legitimate hunting use. *Id.* The legislature in Indiana adopted that state's eighteen-inch-barrel limitation "because with such a barrel length a shotgun has a decreased range and therefore minimal utility as a hunting and sporting tool. Its chief value as a weapon, regardless of its overall length, is in concealability." *Id.* Under this reasoning, a modified shotgun with a barrel length of less than eighteen inches does not become more valuable as a hunting tool merely by converting the weapon's stock to a pistol-like grip.

In light of the persuasive authority from other jurisdictions and the legislative history of Minnesota's statute against short-barreled

1.  The relevant provisions of the New York statute read as follows:

    3.  "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified or otherwise has an overall length of less than twenty-six inches.

    \*      \*      \*      \*      \*      \*

    12.  "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

    N.Y.Penal Law § 265.00(3), (12) (McKinney 1988).

shotguns, we find that the inclusion of a weapon like Ellenberger's in Minn.Stat. § 609.67, subd. 1(c), is consistent with the intent behind its enactment.

## DECISION

Because Ellenberger's weapon was a short-barreled shotgun within the meaning of Minn.Stat. § 609.67, subd. 1(c), the district court erred by dismissing the complaint against him.

**Reversed and remanded.**